[Cite as *In re Wiles*, 2012-Ohio-4844.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IN RE: JODI K. WILES

JODI K. WILES

       Applicant

Case No. V2011-60123

Commissioners:
E. Joel Wesp, Presiding
Necol Russell-Washington

OPINION

{¶1} The appeal presently before this panel involves injuries sustained by the applicant, Jodi Wiles, as the result of being a passenger on a motorcycle driven by Joe Bennington. After thoughtful consideration, this panel finds that the applicant's claim should not be barred by R.C. 2743.60(B)(1)(b), since the Attorney General failed to prove the applicant knew or should have known that the driver of the motorcycle was under the influence of alcohol at the time she rode with him. Accordingly, this panel reverses the Attorney General's decision denying the applicant's claim.

Procedural History

{¶2} On September 7, 2010, applicant, Jodi Wiles, filed a compensation application as the result of an incident that occurred on June 13, 2009. On November 9, 2010, the Attorney General issued a finding of fact and decision denying the applicant's claim for an award of reparations pursuant to R.C. 2743.60(B)(1)(b). The Attorney General's investigation revealed that the applicant witnessed the driver "consume multiple alcoholic beverages" prior to riding with him. Accordingly, the Attorney General asserted the applicant "knew, or reasonably should have known" the driver was under the influence of alcohol prior to accepting the ride which resulted in her injuries.

{¶3} On December 15, 2010, applicant submitted a request for reconsideration contending she was a victim of the driver driving at an excessive speed, road rage, and a possible victim of kidnapping.  She asserted that she had no knowledge that the driver was under the influence of alcohol prior to accepting the ride.

{¶4} On February 4, 2011, the Attorney General rendered a Final Decision finding no reason to modify the initial decision.  On February 10, 2011, the applicant filed a notice of appeal from the February 4, 2011 Final Decision of the Attorney General.  Hence, a hearing was held before this panel of commissioners on May 2, 2012 at 1:25 p.m.

II. Applicant's Position

{¶5} The applicant and her attorney, Michael Falleur, attended the hearing, while Associate Assistant Attorney General Heidi James represented the state of Ohio.   Prior to commencement of the hearing, applicant moved to allow a Google map presentation of the trip taken by the applicant to be shown.  The Attorney General expressed no objection and the motion was granted.

{¶6} Applicant stated that this case involves a motorcycle crash which occurred in June 2009.  The driver of the motorcycle, Joe Bennington died as the result of this incident. Applicant asserts the cause of the accident was road rage on the part of Joe Bennington as the result of being cut off in traffic.  Furthermore, the applicant did not witness Joe drinking shots so she was unaware that he was intoxicated prior to the crash.

III. Attorney General's Position

{¶7} The Attorney General contends sufficient evidence was introduced to support a denial of the applicant's claim pursuant to R.C. 2743.60(B)(1)(b).  The file reflects that the applicant observed Joe Bennington drinking, admitted to being told that Joe was drinking outside her presence and Joe's blood alcohol was determined to be between

.22 and .24. Finally, the applicant communicated to the Attorney General's staff that she knew Joe consumed at least six beers that day.

IV. Witness Testimony and Argument

{¶8} Applicant Jodi Wiles took the witness stand. She testified that she first met Joe Bennington on April 25, 2009. She recounted that she rode motorcycles with Joe on several occasions, either by driving her own motorcycle with him or as a passenger on his motorcycle, prior to the incident in question.

{¶9} Jodi related that drinking and driving was a topic that she had discussed with Bennington since a former boyfriend of hers was killed while operating his motorcycle drunk approximately four years prior to the accident.

{¶10} The applicant summarized the events leading up to the crash on June 13, 2009 as follows: the day started in Mount Vernon with them traveling to the Breeze Inn, a distance of approximately three miles, at approximately 11:30 a.m. At that time they were informed that a Poker Run, a charity motorcycle event, was being held that day and they were invited to join. Jodi acknowledged that Joe drank a Bud Light at this location. They spent approximately one half hour to forty-five minutes at this location. Next, they proceeded to the Duchess at approximately 12:30 p.m. She recalled she had a rum and Coke and Joe had another beer. Next stop was Honey Buckets, arriving there at approximately 1:00 p.m. She related they spent approximately forty-five minutes to one hour there. It was at this location that they met "Steve" and "Mike." At Honey Buckets she had another rum and Coke and a storm cloud (a shot drink containing amaretto almond liquor, Barcardi 151 rum, and Bailey's Irish cream). She observed Joe drink another beer. The next stop was Freddie's Bar with an approximate arrival time of 2:15 p.m. Shortly after they arrived, Steve and Mike showed up. She again observed Joe drink a beer. At that time they danced to a couple of songs and then left on the motorcycle. At approximately 2:45 p.m., they departed Freddie's heading towards Newark.

**{¶11}** Jodi testified that Joe's motorcycle was a high performance bike which she described as an "iron horse," "big dog" low rider with a big rear tire and a nine foot rake. However, she expressed no fear in riding with Joe.

**{¶12}** Problems arose when they reached St. Rt. 16 and 79 and they were on the ramp to Main Street. A white car in the left lane moved over to the right lane, the lane in which the motorcycle was traveling. Joe reacted by accelerating the bike causing it to bottom out and he proceeded to hit the guard rail.

**{¶13}** In conclusion she stated she had two rum and Cokes and a storm cloud and Joe had four beers in approximately a three-hour time period. Two weeks after the crash on July 8th, she spoke with Mike and Steve and they told her Joe was drinking storm clouds at Honey Buckets and drinking double shots at Freddie's.

**{¶14}** Upon cross-examination, Jodi conceded that neither she nor Joe ate any food prior to the crash. Joe went in and out of the bar when they were at Honey Buckets, but remained inside when they were at Freddie's. Jodi only entered Freddie's to dance with Joe and did not consume any alcohol there.

**{¶15}** Upon further questioning by the Attorney General, the applicant admitted that Joe had a storm cloud when they were at Honey Buckets. However, the applicant changed her testimony when questioned by a panel commissioner. Whereupon, the testimony of the applicant was concluded.

**{¶16}** At that time the Attorney General called his witness Jim Saunders, a field investigator for the Attorney General's office out of turn. The applicant expressed no objection when Mr. Saunders took the stand. Mr. Saunders related he was assigned Jodi Wiles' case. He recounted the investigative process and was shown a copy of the supplemental field report marked as State's Exhibit D. This supplemental report was prepared as the result of the applicant submitting a request for reconsideration. Based upon his conversation with the applicant prior to the preparation of this report, Mr. Saunders detailed that the applicant told him the first bar she and Joe Bennington went to was Honey Buckets where Joe consumed four beers. Next, they proceeded to

Freddie's where Joe drank two more beers. She told Mr. Saunders while at Freddie's someone related to her that they observed Joe in the bar where he drank two more beers. She also related that she had "hungout with/dated" Joe for approximately four months.

{¶17} Upon cross-examination, Mr. Saunders stated he initiated the phone call to gather background information on the events leading up to the incident. Mr. Saunders was shown the initial field report prepared in this case. This initial report did not thoroughly delve into the events leading up to the crash. Mr. Saunders explained that the prior stops at the Breeze Inn or Duchess were never mentioned. He recounted the telephone interview was conducted with the purpose of getting the applicant's version of events, she did not volunteer nor did he ask about other witnesses to the events leading up to the crash.

{¶18} Upon redirect examination, Mr. Saunders related his field investigative work is performed long before there is any determination concerning the merits of a claim. Mr. Saunders stated he was merely trying to determine the facts and was not concerned with the ultimate outcome of the case. Finally, he believed the applicant would have no reason to lie to him about the events leading up to the crash. Whereupon the testimony of John Saunders was concluded.

{¶19} The applicant called Steve Kofod to the witness stand. Mr. Kofod stated on June 13, 2009 he rode his motorcycle to Honey Buckets and met Mike DeVore at approximately 12:30 p.m. Upon arrival at Honey Buckets he noticed that Jodi Wiles, a person whom he had known for approximately 20 years, was there and she was accompanied by Joe Bennington, a person he met for the first time that day.

{¶20} He observed Joe drinking beer and consuming at least two tall storm clouds. He stated at this time Jodi was outside the bar. Upon departing Honey Buckets he observed Joe driving his motorcycle fast for the surrounding environment.

{¶21} The next destination was Freddie's. Jodi and Joe were already at Freddie's upon his arrival. He saw Joe with a beer in his hand, and was told that Joe was

drinking shots.   Upon Joe and Jodi's departure, he was told Joe accelerated spraying gravel from the parking lot when they left.   At that time, he and Mike DeVore discussed Joe's drinking, Jodi's lack of knowledge, and their regret that they said nothing to Jodi.

{¶22} Upon cross-examination, Mr. Kofod explained that normally a storm cloud is served in a shot glass, however, he observed Joe Bennington drink out of what he described as a "bar glass," a container holding approximately eight ounces of liquid. He stated he knew Joe ordered the first one because he overheard Joe ordering it and he assumed Joe ordered a second because "it looked the same."   Steve conceded that he never overheard Joe telling anyone to keep quiet about him drinking storm clouds or keeping this fact from Jodi.

{¶23} At Freddie's, Steve did not see either Joe or Jodi eat any food.   While Steve observed Joe with a beer bottle in his hand, he did not know how many beers Joe consumed while at Freddie's.   Steve stated Joe and Jodi were inside Freddie's upon his arrival, shortly thereafter he saw Jodi go outside and to the best of his recollection she never reentered Freddie's.   Steve acknowledged that upon leaving Freddie's Joe was acting "crazier."   Whereupon, the testimony of Steve Kofod was concluded.

{¶24} The applicant next called Mike DeVore to the witness stand.   On June 13, 2009, Mike agreed to meet Steve Kofod at Honey Buckets for an afternoon of motorcycle riding.   While at Honey Buckets, he observed Jodi and Joe drinking beer.   Prior to leaving Honey Buckets before traveling to Freddie's, Mike noticed Joe drinking a storm cloud.   At the time, Joe told Mike not to tell Jodi he was drinking a storm cloud prior to leaving.   Mike stated they were at Honey Buckets for approximately 45 minutes.

{¶25} While at Freddie's he was with Jodi both inside and outside the establishment, while Joe remained inside.   As Mike was near the bar area, he recounted that an individual purchased shots for the approximately five or six people standing at the bar, one of whom was Joe.   According to Mike, approximately four members of this group declined to drink their shots, then Joe dumped approximately five shots into one glass

and "downed it" without hesitation.    However, Mike stated that Joe appeared fine so he did not mention Joe's behavior to Jodi.

**{¶26}** Upon cross-examination, Mike acknowledged that he saw Joe drink a storm cloud in a tall glass at Honey Buckets.    Mikes believed Joe spent about half of his time inside and the other half outside of Honey Buckets, while Mike spent most of his time outside.    Mike conceded he did not know what Joe was doing inside of Honey Buckets while he was outside.

**{¶27}** At Freddie's, Mike saw Joe sitting at the bar when he observed Joe drink approximately five shots at one time.    At no time, while at Freddie's did Joe tell Mike to keep his drinking from Jodi.    On the date of the incident he had no discussion with Jodi about Joe's drinking.    Whereupon, the testimony of Mike DeVore was concluded.

**{¶28}** The applicant, Jodi Wiles was recalled to testify.    Referring to the supplemental field report, Jodi denied telling Jim Saunders that Joe consumed four beers at Honey Buckets.    She also denied that anyone told her at Freddie's that Joe was drinking.    It was only on July 8th that she learned from Steve and Mike that Joe had been drinking "behind her back."

**{¶29}** Upon cross-examination, Jodi stated she did not recall speaking to Jim Saunders on the phone.    She was unclear who she spoke to and what type of questions were posed to her.    Jodi again stated she observed Joe Bennington only consume four beers throughout the day.    Whereupon, Jodi concluded her testimony.

**{¶30}** In closing, while the applicant acknowledged that Joe Bennington's blood alcohol level far exceeded the state's limit for driving while intoxicated, he did not act impaired and she did not know he was intoxicated.    Applicant contends that the behavior and observation of the driver is important in considering whether or not that person is impaired.    From Jodi's observation of Joe at Freddie's it appeared to her that Joe was functioning as he normally did.    Applicant asserted at the time of the crash road rage, not alcohol impairment, was involved.    The applicant contends for a disqualification pursuant to R.C. 2743.60(B)(1)(b) it must be shown that the passenger observe the

driver drinking a quantity of alcohol that is not safe, or that the driver's outward behavior shows that he was under the influence of alcohol.   In other words, was there something in the driver's behavior connected to the consumption of alcohol, that put the passenger on notice as to the risk involved with riding with the driver.   The applicant asserts the question of drinking and driving was discussed with Joe, and while he breached their understanding, she did not have sufficient knowledge of the impairment Joe was under at the time she accepted the ride with him.

**{¶31}** The Attorney General stated the standard to decide cases pursuant to R.C. 2743.60(B)(1)(b), has been previous expounded in *In re Garza*, V2004-60610tc (12-4-04) and *In re Mercer*, V2010-50469tc (8-30-11), wherein the applicant's knowledge must be based on what a reasonable or prudent person (one of ordinary care and skill) of the same age, intelligence, and experience would have done had they been placed in the same or similar circumstances.   Facts reveal that Jodi Wiles' intention on the day of the incident was to ride with Joe Bennington as a passenger on his motorcycle where they both ordered alcoholic beverages.   Jim Saunders' testimony revealed that Jodi told him Joe Bennington drank four beers at Honey Buckets and another couple at the next location.   Mr. Saunders had no reason to be untruthful in the preparation of the field investigator's report, the supplemental field investigator's report or in testimony before this panel.

**{¶32}** The case at bar is similar to the cases of *Mercer* and *In re Shontee*, V2010-50027tc (8-30-11).   In *Mercer*, the applicant testified that she saw the driver drink some alcohol before getting to the bar and at least two drinks while in the bar, although they remained separated throughout the evening.   This evidence was sufficient to affirm the Attorney General's denial pursuant to R.C. 2743.60(B)(1)(b)(i). In the case at bar, the applicant knew that Joe Bennington had consumed at least four beers and was under the influence of alcohol at the time of the incident.

**{¶33}** The applicant does not believe the panel should rely on the holdings in *Mercer* and *Shontee* since these cases turned of the fact that once the passengers realized the

driver was drunk they did not avail themselves of the opportunity to exit the vehicle even though that opportunity was presented to them.   In the case at bar, applicant did not have sufficient observable evidence to appreciate the risk she was assuming when she got on the motorcycle with Joe Bennington, and accordingly, the Attorney General's decision should be reversed.   Whereupon, the hearing was concluded.

V. Controlling Law and Precedent

{¶34} R.C. 2743.60(B)(1) states:

    a)     "(a) The claimant is the offender or an accomplice of the offender who committed the criminally injurious conduct, or the award would unjustly benefit the offender or accomplice.

    b)     "(B)(1) The attorney general, a panel of commissioners, or a judge of the court of claims shall not make or order an award of reparations to a claimant if any of the following apply:

    c)     "(b) Except as provided in division (B)(2) of this section, both of the following apply:

    d)     "(i) The victim was a passenger in a motor vehicle and knew or reasonably should have known that the driver was under the influence of alcohol, a drug of abuse, or both.

    e)     "(ii) The claimant is seeking compensation for injuries proximately caused by the driver described in division (B)(1)(b)(i) of this section being under the influence of alcohol, a drug of abuse, or both."

{¶35} The Attorney General has the burden with respect to proof of [exclusionary criteria R.C. 2743.60].   *In re Williams*, V77-0739jud (3-26-79); and *In re Brown*, V78-3638jud (12-13-79).

{¶36} The use of the term "accomplice" in R.C. 2743.60(B) does not require the court to analyze the conduct of an applicant using the Ohio Criminal Code definition of complicity, under section R.C. 2923.03.   If an applicant accepts a ride with a legally

impaired driver and when the preponderance of the evidence indicates that applicant has knowledge of the driver's impaired condition, the applicant was an accomplice as defined in R.C. 2743.60(B).   *In re Jan*, V97-57941jud (3-15-99).

**{¶37}** "We believe the legislative intent of R.C. 2743.60(B) is to prevent individuals from recovering from the fund who truly knew or had good reason to know of a driver's intoxication yet intentionally disregard such a risk.   R.C. 2743.60(B) cases are fact specific and require a heightened level of scrutiny and analysis of those facts on a case-by-case basis under the law.   The premise of R.C. 2743.60(B) is based upon a reasonable person standard, which ultimately poses the question of what would a prudent person (one of ordinary care and skill) of the same age, intelligence, and experience have done in the same or similar circumstances."   *In re Garza*, V2004-60610tc (10-21-04), 2004-Ohio-7266 ¶11, 12.

**{¶38}** Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

**{¶39}** Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause.   The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

**{¶40}** The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact.   *State v. DeHass*, 10 Ohio St. 2d 230, 227 N.E. 2d 212 (1967), paragraph one of the syllabus.   The court is free to believe or disbelieve, all or any part of each witness's testimony.   *State v. Antill,* 176 Ohio St. 61,197 N.E. 2d 548, (1964).

VI. Panel's Determination

**{¶41}** The only issue before this panel is whether the applicant's claim for an award of reparations should be denied pursuant to R.C. 2743.60(B)(1)(i). Accordingly, we must weigh the evidence contained in the claim file and the testimony of the witnesses to determine whether Jodi Wiles knew or should have known Joe Bennington was "under the influence of alcohol" before she rode with him on the back of his motorcycle.

**{¶42}** We find the testimony of the applicant, Steve Kofod, and Mike DeVore was credible. The applicant testified that she observed Joe drink four beers from the time they arrived at Breeze Inn until the accident, a period of approximately three and one half hours. Prior to leaving Freddie's Bar, the last stop before the accident, she related that Joe did not appear to be intoxicated or impaired and expressed no fear in riding with him. Her observations were corroborated by the testimony of Steve Kofod and Mike DeVore. Although both men watched Joe consume a number of alcoholic beverages in addition to the beer, they both related that Joe did not appear intoxicated or impaired. Even when confronted with Joe's gravel throwing exit from Freddie's Bar the men attributed this conduct to Joe's macho personality rather than alcohol abuse.

**{¶43}** Furthermore, both men related that Joe did not appear to want Jodi to know that he was consuming hard liquor as well as beer. While both witnessed Joe's extreme alcohol consumption (Joe's blood alcohol level was between .22gm% - .24gm% at the time of the autopsy) neither informed Jodi. Although witness statements taken by police after the crash reveal that Joe's operation of the motorcycle was very aggressive, all witnesses agreed that such conduct was consistent with his brash, presumptuous demeanor.

**{¶44}** The applicant expressed her reservations about drinking and driving since a former boyfriend was killed operating his motorcycle while under the influence of alcohol. We find the applicant's sentiments to be credible and do not believe she would have agreed to ride with Joe if she believed he was intoxicated.

**{¶45}** We believe the case at bar is analogous to prior panel holdings in *In re Fix*, V2004-60369tc (8-3-04), *In re Garza*, V2004-60610tc (11-2-04); and *In re Ohlemacher*, V2010-50272tc (11-12-10).

**{¶46}** In *Fix*, the applicant stated he had the opportunity to observe the offender for approximately one hour. During that time period, he acknowledged viewing the offender consume only one beer. Three other witnesses also stated they watched the offender drink one-to-two beers and he did not appear intoxicated. However, the offender's blood alcohol after the crash was determined to be .138. The applicant became aware of the offender's impaired condition only when, as a passenger on the offender's motorcycle, he experienced the offender driving 80 mph in a 35-mph speed zone and the offender refused to slow down. This occurred shortly before the crash. A panel of commissioners in finding the Attorney General had failed to establish a denial pursuant to R.C. 2743.60(B)(1), reasoned that the applicant only observed the offender drink only two beers at most, and no one thought the offender was inebriated at the time the offender and the applicant departed on the offender's motorcycle. Accordingly, the panel of commissioners decided that a reasonable prudent person would have also concluded that the offender was not drunk.

**{¶47}** In *Garza*, the applicant, age 18, accepted a ride with the offender which resulted in an accident which caused injury to the applicant. Four witnesses described the offender's condition before the accident: they asserted he did not appear under the influence of alcohol even though they saw him consume between three to five beers on a five-to-five and one-half hour period, while one witness stated the offender exhibited all the signs of intoxication, i.e., slurred speech, red glazed over eyes, unsteadiness, and loud and rambunctious behavior. The panel determined the Attorney General failed to meet the burden of proof with respect to a denial pursuant to R.C. 2743.60(B)(1) based upon the following factors:

        a)        "1) the victim was under Ohio's legal drinking age (the record is silent concerning whether the victim was familiar with the substance),

2) the victim was significantly younger than the offender and witnesses; 3) the length of victim's and offender's interaction before and during the visit to offender's home is unknown; 4) it appears that the offender and victim were not well acquainted with each other, based on the offender's statement; 5) the offender's blood alcohol level was only slightly higher than the legal limit, which may have prevented him from demonstrating obvious signs of intoxication to the victim or others; and 6) the victim exercised reasonable judgment, just prior to the accident, by declining to ride on the motorcycle with the offender without a helmet."

**{¶48}** Finally, in *Ohlemacher*, a panel of commissioners held that the applicant's claim should not be denied pursuant to R.C. 2743.60(B)(1), since a bar owner who observed both the applicant and the offender prior to the motorcycle crash felt that the applicant was intoxicated but the offender was not. However, information provided by the coroner's office revealed that the offender's blood alcohol level was over the legal limit.

**{¶49}** In the case at bar, we believe the applicant acting as a reasonable prudent person and based upon her observation of Joe Bennington had no reason to believe Joe Bennington was "under the influence of alcohol" prior to accepting a ride with him.

**{¶50}** Lastly, we cannot find based solely on the applicant's observation of Joe Bennington that he was under the influence of alcohol by consuming four beers in a period of three and one half hours. A review of the case file reveals that Joe was 73" tall and weighed 202 lbs.

**{¶51}** Based on the facts and circumstances surrounding this case, we find no reason why the applicant would have known or should have known that Joe Bennington was inebriated, or under the influence of alcohol.

**{¶52}** Furthermore, the Attorney General has failed to meet his burden of proof with respect to R.C. 2743.60(B)(1). Therefore, we find that the February 4, 2011 decision of

the Attorney General shall be reversed and this claim shall be remanded to the Attorney General for economic loss calculations and decision.

_____
E. JOEL WESP
Presiding Commissioner

_____
NECOL RUSSELL-WASHINGTON
Commissioner

**Commissioner Susan G. Sheridan, Dissenting Opinion:**

{¶53} I respectfully dissent. I believe the Attorney General's decision of February 4, 2011 should be affirmed since this claim was correctly denied pursuant to R.C. 2743.60(B)(1).

{¶54} While I concur with the majority's finding that the testimony of the applicant, Steve Kofod, and Mike DeVore was credible, I believe one who observes a person drink four to five beers and consume no food reasonably should know that that individual was under the influence of alcohol.

{¶55} The facts reveal that the applicant and Joe Bennington departed on Joe's motorcycle at approximately 11:30 a.m. on a Saturday morning, for a day of touring various bars that were the sites of a poker run. The applicant knew that alcohol would be consumed and she acknowledged that both she and Joe drank during the trip. She also conceded that neither one had anything to eat during their travels. The applicant admitted she drank two mixed drinks and a storm cloud during this approximately three and one-half hour period. The applicant acknowledged that Joe spent the majority of his time while at Honey Buckets and Freddie's inside the facilities while she remained outside. Certainly, Joe had the opportunity to drink while out of her sight but at no time

did her testimony reflect that she inquired about any drinking that may have occurred outside of her presence.   While the applicant made a point of expressing her displeasure about drinking and operating a motorcycle based upon the death of a past boyfriend, it appears she had no conversation about the topic on the day of the crash.   I believe based on the applicant's observations and her familiarity with the venues involved, a reasonable person would have realized that Joe Bennington was under the influence of alcohol prior to leaving Freddie's Bar on the back of Joe's motorcycle.

**{¶56}** The majority relies on the holdings in *In re Fix*, *Garza*, and *Ohlemacher* to justify its ruling, however, I believe each of these cases can be distinguished from the case at bar.

**{¶57}** The panel rendered its decision in *Fix,* on the understanding that the victim had not seen the offender in twenty years, the victim plus three witnesses observed the offender drink only one to two beers, and none of these individuals believed the offender was impaired.   However, in the case at bar the applicant had, at the minimum a six-week boyfriend-girlfriend relationship with the offender.   She personally observed the offender drink four to five beers and knew he spent a substantial amount of time away from her in bars.   Accordingly, I do not believe the holding in *Fix* is relevant to the case at bar.

**{¶58}** In *Garza* the panel considered the victim's age (18), his inexperience around alcohol, the disparity in the ages of the victim, the offender, and the witnesses, the lack of acquaintanceship between the victim and the offender, the fact that the offender's blood alcohol level, .110, was only slightly higher than the legal limit which might have prevented the offender from demonstrating obvious signs of intoxication to the victim, and the victim's exercise of reasonable judgment by declining to ride on a motorcycle without a helmet prior to accepting a ride with the offender.

**{¶59}** In the case at bar Jodi Wiles was 42 years old, and older than Joe Bennington. Joe's blood alcohol was nearly three times the legal limit and, thus, it seems implausible that he showed no signs of impairment.   Jodi chose not to wear a helmet while riding

on the back of Joe's motorcycle.   Again, I do not believe the factors in *Fix* are consistent with the facts in the current case.

**{¶60}** Finally, *Ohlemacher*, a case where I sat on the panel, approved an agreement reached by the parties and did not involve an extensive analysis of the facts. Accordingly, I do not believe this case has much precedential of value.

      a)      Lastly, I do not agree with the majority's view that the consumption of four to five beers  in three and one half hours does not equate to impairment.  I believe based solely on the applicant's testimony that she personally observed Joe drink four beers which is sufficient to prove he was under the influence and accordingly her claim should be denied pursuant to R.C. 2743.60(B)(1).  Therefore, I would affirm the February 4, 2011 decision of the Attorney General.

_____
SUSAN G. SHERIDAN
Commissioner



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IN RE: JODI K. WILES

JODI K. WILES

      Applicant

Case No. V2011-60123

Commissioners:
E. Joel Wesp, Presiding
Necol Russell-Washington
<u>ORDER</u>

IT IS THEREFORE ORDERED THAT

{¶61} State's Exhibit D is admitted into evidence;

{¶62} The February 4, 2011 decision of the Attorney General is REVERSED and judgment is rendered in favor of the applicant;

{¶63} This claim is remanded to the Attorney General for calculation of economic loss and decision;

{¶64} This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{¶65} Costs are assumed by the court of claims victims of crime fund.

_____
E. JOEL WESP
Presiding Commissioner


_____
NECOL RUSSELL-WASHINGTON
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2012\June - Sept 2012\V2011-60123 Wiles.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Licking County Prosecuting Attorney and to:

Filed 9-13-12
Jr. Vol. 2283, Pgs. 196-197
Sent to S.C. reporter 10-18-12